UNITED STATES DISTRICT COURT
NORTHERN OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| KATIE (CONERLY) WIGGINS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO. 3:16-cv-00377 |
| | ) |
| FRANCISCAN PHYSICIAN | ) |
| MANAGEMENT CORPORATION, | ) |
| d/b/a FRANCISCAN PHYSICIAN | ) |
| NETWORK, | ) |
| | ) |
| Defendant. | ) |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

**I. NATURE OF THE CASE**

1.   This is an employment discrimination action brought by Plaintiff, Katie (Conerly) Wiggins[1] ("Wiggins" and/or "Plaintiff"), against Defendant, Franciscan Physician Management Corporation, d/b/a Franciscan Physician Network[2] ("Franciscan" and/or "Defendant"), for unlawfully discriminating against her on the basis of race (African American), in violation of Title VII of the 1964 Civil Rights Act ("Title VII"), 42 U.S.C. §§ 2000e *et seq*., as amended, and for discrimination on the basis of race (African American), in violation of the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981a.

**II. PARTIES**

2.   Wiggins is a citizen of the United States and at all time relevant to this lawsuit resided

---

[1] The Plaintiff has married since this case was originally begun. She is identified in all EEOC documents as "Conerly," but is identified by her correct current surname, "Wiggins" in this Complaint.

[2] Wiggins' EEOC Charge, which was filed *pro se*, identified her employer as "Premier Health Care - Women Health Association." Wiggins' counsel has identified the Defendant in this matter by its appropriate legal name, as shown in the Indiana Secretary of State's Business Search database.

within the geographic boundaries of the Northern District of Indiana.

3.  Defendant is an Indiana corporation doing business within the geographic boundaries of the Northern District of Indiana at all times relevant to this action and the claims Wiggins asserts against Defendants arose within the geographic boundaries of the Northern District of Indiana.

### III. JURISDICTION AND VENUE

4.  This Court has jurisdiction over the subject matter of this case pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1343, and 42 U.S.C. § 2000e-et seq.

5.  Defendant is an "employer" within the meaning of 42 U.S.C. § 2000e(b).

6.  Wiggins is an "employee" within the meaning of 42 U.S.C. § 2000e(f).

7.  Wiggins satisfied her obligation to exhaust administrative remedies, having timely filed Charge of Discrimination 470-2015-02508, alleging discrimination on the basis of race with the Equal Employment Opportunity Commission within 300 days of the alleged discrimination, and receiving a Notice of Dismissal and Right to Sue thereon on March 23, 2016,[3] and by commencing this action within ninety days of the receipt thereof.

8.  All events, transactions, and occurrences concerning this case have arisen in the geographical environs of the Northern District of Indiana, thus venue is proper in this Court.

### IV. FACTUAL ALLEGATIONS

9.  Wiggins, an African American woman, commenced employment with Defendant in March 2015, as an ultrasound technician. Her immediate supervisor was Lori Baids ("Baids")(Caucasian).

10.  At all times relevant to this action, Wiggins met or exceeded Franciscan's legitimate

---

[3] Although Wiggins' Right to Sue shows a mail date of March 13, 2016, the EEOC mailed *two* copies of the Notice to Franciscan's attorney, and did not mail a copy to Wiggins' attorney. Wiggins' attorney only received the Right to Sue on March 23, 2016, when Franciscan's attorney emailed a copy to Wiggins' attorney.

job performance expectations.

11.	At the time she was hired, Wiggins was told that she would receive formal training at the GE Health Institute, as well as five to eight weeks of on-the-job training. Wiggins was also told that a representative of the GE ultrasound machine company would come and train her on the ultrasound machine.

12.	On March 20, 2015, when Wiggins returned to Franciscan after a previously scheduled vacation, she was informed by Janice Roach ("Roach")(Caucasian), another ultrasound technician, that Wiggins was going to go through orientation with the technicians in the main hospital. Wiggins later learned this was because Roach and Haley Ney ("Ney")(Caucasian), another ultrasound technician, refused to train her. Baids never informed Wiggins of this change.

13.	Within two weeks of Wiggins' start date, there was a meeting among Baids and the remaining ultrasound technicians (except Wiggins). Although Roach told Wiggins about the meeting, she refused to give Wiggins any details.

14.	Wiggins received no information from that, or any of the other meetings from which she was excluded.

15.	While going through orientation at the main hospital, Wiggins only saw a single obstetrical ultrasound exam, and a single pelvis ultrasound.

16.	At one point, Wiggins sat in a room basically increasing her computer knowledge due to lack of scanning opportunities.

17.	During this time, the technicians at the main hospital all expressed their concerns about why Wiggins was being sent to the main hospital for training when the main hospital was receiving almost no OB patients,

18.	The staff at the main hospital had Wiggins come in at different times in the evenings

trying to catch some OB patients.

19. On the day following one of Wiggins' evening shifts, Baids texted Wiggins to inquire where she was, as Baids had scheduled her for computer training. As a result, the computer instructor had to wait over two hours for me to arrive.

20. While Wiggins was on vacation Baids arranged for her to job shadow in the main hospital and set Wiggins up for computer training. However, Baids never informed Wiggins of these arrangements. When Wiggins inquired why Baids had not notified Wiggins about the arrangements, Baids' response was "I guess I should have let you know".

21. On May 19, 2015, Wiggins was transferred to work at Premiere Health, the location for which she had originally been hired. Following her transfer, Roach and Ney continued to refuse to train Wiggins.

22. After her transfer to Premiere, Wiggins complained on numerous occasions, to Franciscan's Human Resources Department, as well as to Baid, about Roach's and Ney's continued refusal to provide her with training.

23. Despite the fact that Wiggins had been scanning alone for more than two months, following Wiggins' complaints to Human Resouces and to Baid, she was placed on a Performance Improvement Plan ("PIP") on or about June 4, 2015. While Baid alleged that the PIP was due to concerns expressed by patients and physicians, Wiggins had not been made aware of any such complaints at any time prior to being placed in the PIP.

24. On July 1, 2015, Wiggins was assigned to perform ultrasound scans on two patients. Although Wiggins successfully performed both scans, she was nevertheless placed on a Performance Improvement Plan ("PIP").

25. After Wiggins was placed on the PIP, a technician named Amanda (LNU) was

assigned to train and evaluate her. Amanda saw Wiggins on July 21 and 22, for approximately two hours each day. However, Amanda did not actually provide Wiggins with any training under the PIP. Instead, she told Wiggins that she would "give her some pointers" but would not evaluate her.

26. Wiggins spoke to Baids about Amanda, and the failure to provide Wiggins with any actual training under the PIP, on July 28, 2015. Baid told Wiggins the PIP would be extended. Baid also told Wiggins she was aware that Amanda was not evaluating Wiggins.

27. Wiggins noted that she was well beyond her 90-day probationary period, but that she was effectively still being considered as probationary.

28. In addition to her concerns involving training, Wiggins was also subjected to harassment by one of Franciscan's physicians, Dr. Ramierez, who placed inappropriate and unprofessional comments concerning Wiggins in patient charts.

29. Wiggins was compelled to resign her employment as a result of the Defendant's discriminatory actions.

## V. CAUSES OF ACTION

### Count One: Race Discrimination in Violation of Title VII

30. Wiggins hereby incorporates paragraphs one (1) through twenty-nine (29) of her Complaint by reference.

31. Franciscan violated Wiggins' right to be free from race-based discrimination as protected by Title VII by subjecting Wiggins to terms and conditions of employment that were less favorable than those afforded to similarly-situated Caucasian employees, in that it repeatedly refused to provide Wiggins with the training required to perform her job, despite having provided training to similarly-situated Caucasian employees, and by constructively discharging her.

32. Franciscan's actions were intentional, willful, and/or taken with reckless indifference

to Wiggins's rights as protected by Title VII.

33. Wiggins suffered and continues to suffer harm, including but not limited to loss of wages and benefits, emotional distress, embarrassment, humiliation, and damage to her personal and professional reputation, as a result of Franciscan's unlawful acts.

### Count Two: Race (Disparate Treatment) in Violation of 42 U.S.C. § 1981

34. Wiggins hereby incorporates paragraphs one (1) through thirty-three (33) of her Complaint by reference.

35. The relationship between Franciscan and Wiggins was contractual in nature.

36. Franciscan denied Wiggins the same rights to make and enforce its contract as that afforded to non-African American and/or non-white employees.

37. Franciscan's actions were intentional, willful, and/or taken with reckless disregard of Wiggins's clearly established civil rights.

38. Wiggins suffered and continues to suffer harm, including but not limited to loss of wages and benefits, emotional distress, embarrassment, humiliation, and damage to her personal and professional reputation, as a result of Franciscan's unlawful acts.

### Count Three: Race Discrimination (Hostile Work Environment) in Violation of Title VII

39. Wiggins hereby incorporates paragraphs one (1) through thirty-eight (38) of her Complaint by reference.

40. Franciscan violated Wiggins's right to be free from race-discrimination as protected by Title VII by subjecting and/or allowing Wiggins to be subjected to repeated acts of race-based harassment that created a hostile work environment, and by refusing to take action when Wiggins reported it.

41. Franciscan's actions were intentional, willful, and/or taken with reckless indifference

to Wiggins's rights as protected by Title VII.

42. Wiggins suffered and continues to suffer harm, including but not limited to loss of wages and benefits, emotional distress, embarrassment, humiliation, and damage to her personal and professional reputation, as a result of Franciscan's unlawful acts.

**Count Four: Race Discrimination (Hostile Work Environment) in Violation of § 1981**

43. Wiggins hereby incorporates paragraphs one (1) through forty-two (42) of her Complaint by reference.

44. Franciscan violated Wiggins's right to be free from race-based discrimination as protected by Title VII by subjecting and/or allowing Wiggins to be subjected to repeated acts of race and/or color-based harassment that created a hostile work environment, and by refusing to take action when Wiggins reported it.

45. Franciscan's actions were intentional, willful, and/or taken with reckless indifference to Wiggins's rights as protected by § 1981.

46. Wiggins suffered and continues to suffer harm, including but not limited to loss of wages and benefits, emotional distress, embarrassment, humiliation, and damage to her personal and professional reputation, as a result of Franciscan's unlawful acts.

**Count Five: Retaliation in Violation of § 1981**

47. Wiggins hereby incorporates paragraphs one (1) through forty-six (46) of her Complaint as if they were stated herein.

48. Franciscan unlawfully retaliated against Wiggins because she engaged in activity protected by U.S.C. § 1982 by placing her on a PIP after she engaged in protected activity by complaining of conduct she reasonable believed was racially discriminatory.

49. Franciscan has treated similarly-situated employees who have not engaged in

protected activity more favorably in the terms, privileges, and conditions of their employment.

50. Franciscan's actions were intentional, willful and/or taken with reckless disregard of Wiggins' rights as protected by the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et. seq.*, as amended.

51. Wiggins suffered and continues to suffer harm, including but not limited to loss of wages and benefits, emotional distress, embarrassment, humiliation, and damage to her personal and professional reputation, as a result of Franciscan's unlawful acts.

## VI. RELIEF

**WHEREFORE,** Wiggins respectfully prays that the Court find in her favor and Order:

52. Franciscan to reinstate Wiggins to the position she would have held absent Franciscan's unlawful discrimination or pay Wiggins front pay in lieu thereof;

53. Franciscan to pay Wiggins's lost wages and benefits incurred as a result of its violation of her civil rights;

54. Franciscan to pay to Wiggins compensatory and punitive damages;

55. Franciscan to pay prejudgment and post-judgment interest on all sums recoverable;

56. Franciscan to pay Wiggins's reasonable attorney fees and costs;

57. Franciscan to cease and desist all future discriminatory actions toward Wiggins; and,

58. Franciscan to provide Wiggins with all other relief that is just and proper.

## DEMAND FOR TRIAL BY JURY

The Plaintiff, Katie Wiggins, by counsel, requests a trial by jury on all issues so triable.

Respectfully submitted,

*Jay Meisenhelder*

Jay Meisenhelder, Atty No. 19996-49  
Robert J. Opat, Atty. No. 33814-49  
JAY MEISENHELDER EMPLOYMENT  
& CIVIL RIGHTS LEGAL SERVICES, P.C.  
650 North Girls School Road, Suite B20  
Indianapolis, IN 46214  
Office Telephone:    317/231-5193  
Facsimile Number:   317/982-5463  
Email Address:      jaym@ecrls.com  
                    robertopat@ecrls.com