UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| KATIE WIGGINS, | ) |
| --- | --- |
| Plaintiff, | ) |
| v. | ) Case No. 3:16-CV-377 JD |
| FRANCISCAN PHYSICIAN MANAGEMENT CORP., | ) |
| Defendant. | ) |

## OPINION AND ORDER

Plaintiff Katie Wiggins filed this action alleging that she was discriminated and retaliated against by Franciscan Physician Management Corp., for which she worked as an ultrasound technician. Discovery closed and Franciscan moved for summary judgment. Ms. Wiggins, who is represented by counsel, sought and received an extension of time to respond to the motion, but never filed a response by that new deadline. Thus, evaluating the motion on the evidence before it, the Court concludes that Franciscan is entitled to summary judgment.

## I. FACTUAL BACKGROUND

Upon the filing of a motion for summary judgment, the non-moving must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Robin v. Espo Eng'g Corp.*, 200 F.3d 1081, 1088 (7th Cir. 2000). As some courts have put it, summary judgment is the "put up or shut up" moment in a lawsuit, when a plaintiff must "show what evidence [s]he has that would convince a trier of fact" to find in her favor on any disputed elements. *Olendzki v. Rossi*, 765 F.3d 742, 749 (7th Cir. 2014). When a party fails to submit evidence in response to a motion for summary judgment, the Court can consider the facts set forth by the moving party to

be undisputed. Fed. R. Civ. P. 56(e)(2). Accordingly, the Court deems the facts offered by Franciscan to be undisputed. Those facts are set forth in detail in Franciscan's filings, but the Court offers a brief summary of the relevant facts below.

Katie Wiggins (formerly Conerly), an African American woman, was hired by Franciscan as an ultrasound technician, and started in March 2015. Ms. Wiggins received a week of orientation, after which she began training with two experienced ultrasound technicians. Ms. Wiggins spent half days with each of those technicians. She began by observing the technicians, and then began performing ultrasounds herself under their supervision. This continued for about two months. After the first month, Ms. Wiggins met with a human resources representative for a 30-day post-hire meeting. She said that she was "extremely satisfied" with her employment so far, that she felt welcomed by other employees, and that her training was "going good." After about two months of working with the two technicians, Ms. Wiggins began performing ultrasounds herself, under the supervision of a doctor. The doctor provided verbal instructions and also reviewed Ms. Wiggins' scans before they were submitted. That doctor concluded in early June that Ms. Wiggins was ready to begin performing ultrasounds on her own.

Once Ms. Wiggins began performing ultrasounds on her own, however, multiple patients made complaints about her work. At least one of the doctors she worked with did as well. Accordingly, her supervisor and other medical staff met and decided to have another technician observe and review Ms. Wiggins' work. Before that review occurred, Ms. Wiggins wrote a letter to her supervisor on June 22, 2015, in which she claimed to have been discriminated against and subjected to a hostile work environment. In the letter, Ms. Wiggins stated that she had not received adequate training, and that one of the doctors, Dr. Ramirez, had been disrespectful to her and had criticized her work. Franciscan's human resources manager conducted an

investigation into Ms. Wiggins' concerns. The investigation found that Ms. Wiggins had received proper training, and that while Dr. Ramirez had been rude on one occasion, that situation had already been addressed and Dr. Ramirez had apologized. The investigation also found no indication of racial discrimination or harassment.

In July 2015, Ms. Wiggins' work was observed by another technician, as had been previously decided. The review revealed a number of errors in Ms. Wiggins' scans, and Franciscan determined that the patient complaints and physician concerns were substantiated. Ms. Wiggins was then placed on a performance improvement plan, which she successfully completed in late August or early September. At that time, Ms. Wiggins was moved from Franciscan's Woman's Clinic facility, where she completed her training, to its Premier facility, where she had been hired to work. At that facility, Ms. Wiggins no longer had regular contact with Dr. Ramirez, who worked in another building, and she did not encounter any more of the issues that she had raised in her June 22 letter. However, she submitted a letter of resignation on November 11, stating that she had "been treated in an unfavorable manner," which took a toll on her health. No one at Franciscan had asked or encouraged her to resign.

Ms. Wiggins later filed this action after receiving a right-to-sue letter. She asserted claims for racial discrimination under Title VII (Count 1) and § 1981 (Count 2); claims for a hostile work environment under Title VII (Count 3) and § 1983 (Count 4); and a retaliation claim (Count 5). After the close of discovery, Franciscan moved for summary judgment on December 8, 2017. Ms. Wiggins, by counsel, sought an extension of time to respond to the motion. The Court granted that request, giving Ms. Wiggins until February 5, 2018 to respond. However, that date passed without any filing by Ms. Wiggins. Franciscan then filed a reply brief, citing Ms.

Wiggins' failure to respond. Ms. Wiggins has not submitted any further filings. Accordingly, the motion for summary judgment is now ripe.

## II. STANDARD OF REVIEW

Summary judgment is proper when the movant shows that there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material" fact is one identified by the substantive law as affecting the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" exists with respect to any material fact when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. Where a factual record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial, and summary judgment should be granted. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing *Bank of Ariz. v. Cities Servs. Co.*, 391 U.S. 253, 289 (1968)). In determining whether a genuine issue of material fact exists, this Court must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in that party's favor. *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008); *King v. Preferred Tech. Grp.*, 166 F.3d 887, 890 (7th Cir. 1999). Ms. Wiggins' failure to respond to the motion does not inevitably mean that it will be granted. Rather, the Court may "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(3).

## III. DISCUSSION

Ms. Wiggins has asserted claims for racial discrimination, for a hostile work environment, and for retaliation. Franciscan moved for summary judgment on all claims, and the Court considers them in turn.

4

### A. Counts 1 and 2, Racial Discrimination

In Counts 1 and 2, Ms. Wiggins alleges that she was discriminated against because of her race when she was denied training and when she was constructively discharged. Ms. Wiggins asserts these claims under both Title VII and § 1981, which are analyzed the same for these purposes. *Williams v. Waste Mgmt. of Ill.*, 361 F.3d 1021, 1028 (7th Cir. 2004). A racial discrimination claim requires a plaintiff to show that she suffered an adverse employment action and that it was motivated by her race. *Boss v. Castro*, 816 F.3d 910, 916 (7th Cir. 2016). Franciscan argues that Ms. Wiggins cannot make either showing, as she neither suffered an adverse action, nor were any of the actions of which she complains connected to her race. The Court agrees in both respects.

"[N]ot everything that makes an employee unhappy is an actionable adverse action." *Stutler v. Ill. Dep't of Corr.*, 263 F.3d 698, 703 (7th Cir. 2001). "To be actionable, there must be a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits. In other words, the adverse action must materially alter the terms and conditions of employment." *Id.* (internal citations and quotations omitted); *accord David v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 225 n.35 (7th Cir. 2017).

First, Ms. Wiggins asserted in her complaint that she was constructively discharged when she resigned. If true, that would constitute an adverse action. *Williams*, 361 F.3d at 1032. However, the bar for establishing a constructive discharge is high: "Constructive discharge occurs when an employee's job becomes so unbearable that a reasonable person in that employee's position would be forced to quit." *Id.*; *EEOC v. Univ. of Chicago Hosps.*, 276 F.3d 326, 331 (7th Cir. 2002). "Working conditions for constructive discharge must be even more

egregious than the high standard for hostile work environment because in the ordinary case an employee is expected to remain employed while seeking redress." *Williams*, 361 F.3d at 1034.

Ms. Wiggins has not met that standard here. At the time Ms. Wiggins resigned, she had been working at the Premier facility for about two months. There, she had little interaction with Dr. Ramirez, about whom she had previously complained, as Dr. Ramirez worked in a different building. And during the time she worked at the Premier facility, Ms. Wiggins did not encounter any of the issues that she alleged in her initial letter. Thus, Ms. Wiggins has not shown that her employment was so unbearable at the time she resigned that she could not be expected to continue working while she sought redress for any problems. In fact, there is no evidence that Ms. Wiggins faced any adversity in her employment at the time she resigned. Accordingly, the evidence does not support her claim that she was constructively discharged.

Ms. Wiggins also asserted in her complaint that she was not given adequate training. However, the evidence before the Court at summary judgment does not suggest any deficiency in the training Franciscan provided. When Ms. Wiggins started, she was trained by two ultrasound technicians. She spent half days with each technician, first observing and then performing scans under their supervision. Ms. Wiggins had the assistance of one of the two trainers for at least the first month of her employment, and at a 30-day post-hire meeting with a human resources representative, Ms. Wiggins said her training was "going good" and she had "no complaints." After her training with the two technicians, Ms. Wiggins also had a training period for about a month with one of the doctors, who provided verbal feedback and reviewed her scans before they were completed. Later, after receiving some negative feedback, Ms. Wiggins was observed by another technician, who provided feedback, and she was placed on a performance improvement

plan, which she successfully completed. Ms. Wiggins also received individual training from a GE representative.

Ms. Wiggins alleged in her June 22 letter that the two technicians had refused to train her. The evidence does not support that charge, though. The basis for Ms. Wiggins' allegation was that she heard that the two technicians had voiced concern about having to train a new employee, given their existing workloads. However, that occurred before Ms. Wiggins began her employment (and before the technicians were even aware of her race). Notwithstanding the concerns the technicians voiced at that time, they were directed to train Ms. Wiggins, and they did so. Ms. Wiggins conceded during her deposition that the technicians never refused to provide her any training during her employment. Ms. Wiggins also noted in her June 22 letter that her training was not the same as one of the other technicians. However, Ms. Wiggins actually received much more extensive training than that technician, whose training consisted only of shadowing for a week or two, as she had much more experience when she started.[1] Accordingly, Ms. Wiggins has not identified any shortcoming in her training, so she has not shown that she suffered an adverse action in that respect either.

Ms. Wiggins has also failed to establish that any of these alleged adverse actions occurred because of her race. Simply put, there is no evidence that Ms. Wiggins' race affected her employment in any manner. She does not suggest that anyone at Franciscan ever made any racial comments, and the evidence does not show that she was treated worse than any other employees of a different race. As to the incidents where Ms. Wiggins complained of being

---

[1] Ms. Wiggins also alleged in her complaint that Franciscan declined to send her to the GE Institute for training, but there is no evidence that Franciscan sent any other technicians to that training, nor is there any evidence that Franciscan's failure to send Ms. Wiggins to that training had anything to do with her race.

treated poorly, such as with Dr. Ramirez being disrespectful, there is no evidence that Ms. Wiggins' race had anything to do with it. Accordingly, even if Ms. Wiggins had suffered an adverse action, her claims would fail because no evidence suggests those actions occurred because of her race. The Court therefore grants the motion for summary judgment as to these counts.

**B.     Counts 3 and 4, Hostile Work Environment**

In Counts 3 and 4, Ms. Wiggins asserts claims under Title VII and § 1981 for a racially hostile work environment. Those claims each require a plaintiff to establish that: (1) their work environment was both subjectively and objectively offensive; (2) their race was the cause of the harassment; (3) the conduct was severe or pervasive; and (4) there is a basis for employer liability. *Yancick v. Hanna Steel Corp.*, 653 F.3d 532, 544 (7th Cir. 2011). In moving for summary judgment on these counts, Franciscan argues that Ms. Wiggins cannot establish any of these elements.

To begin with, the evidence does not show that Ms. Wiggins' work environment was offensive, or that any offending conduct was severe or pervasive. Ms. Wiggins alleged in her June 22 letter that Dr. Ramirez had been disrespectful on one occasion, and had criticized her work on other occasions. One instance of alleged disrespectful treatment and some written criticisms of the quality of Ms. Wiggins' work (that, as far as the record shows, were accurate and well-founded) fall short of establishing an offensive environment so severe or pervasive as to alter the conditions of her employment. In addition, there is no evidence that any mistreatment occurred because of Ms. Wiggins' race. "Although a connection between the harassment and the plaintiff's protected class need not be explicit, 'there must be *some* connection, for not every perceived unfairness in the workplace may be ascribed to discrimination motivation merely because the complaining employee belongs to a racial minority.'" *Cole v. Bd. of Trs. of N. Ill.*

8

*Univ.*, 838 F.3d 888, 896 (7th Cir. 2016) (quoting *Zayas v. Rockford Mem'l Hosp.*, 740 F.3d 1154, 1159 (7th Cir. 2014)); *Yancick*, 653 F.3d at 544 ("To support a hostile work environment claim, the plaintiff need not show that the complained-of conduct was explicitly racial, but must show it had a racial character or purpose."). Here, Ms. Wiggins has offered no reason to believe that her race had anything to do with how she was treated by anyone else during her employment. Accordingly, the Court grants the motion for summary judgment as to the hostile work environment claims.

C.  **Count 5, Retaliation**

Finally, in Count 5, Ms. Wiggins asserts a claim for retaliation. Her complaint alleges that, after she complained of discrimination in her June 22 letter, Franciscan retaliated by placing her on a performance improvement plan. A retaliation claim requires a plaintiff to present evidence that (1) she engaged in a statutorily protected activity; (2) she suffered a materially adverse action; and (3) there is a causal connection between the two. *Carter v. Chicago St. Univ.*, 778 F.3d 651, 657 (7th Cir. 2015); *Langenbach v. Wal-Mart Stores, Inc.*, 761 F.3d 792, 799 (7th Cir. 2014).

Ms. Wiggins' claim fails at least because she has not shown that she suffered a materially adverse action. "In the retaliation context, determining whether an action is materially adverse means inquiring whether it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Boss v. Castro*, 816 F.3d 910, 918 (7th Cir. 2016). Here, Ms. Wiggins' claim is based on her placement on a performance improvement plan. However, the Seventh Circuit has held that being placed on a performance improvement plan is not a materially adverse action that can support a retaliation claim. *Langenbach*, 761 F.3d at 799; *Cole v. Illinois*, 562 F.3d 812, 816 (7th Cir. 2009) (finding that "the adoption of the improvement plan did not constitute an adverse action" to support a retaliation claim); *see also Boss*, 816 F.3d at

919 ("As to [the plaintiff's] placement on a [performance improvement plan], this Court has held that implementing such a plan is simply not materially adverse in the discrimination context."). To the extent she intended to rely on any other actions, such as her alleged constructive discharge, she has failed to show that those constitute adverse actions for the reasons discussed above. And finally, though it's not necessary to discuss further, Ms. Wiggins has offered no evidence from which a factfinder could find that any of the actions came in retaliation for her complaint of discrimination. Accordingly, the Court grants summary judgment as to this claim as well.

## IV. CONCLUSION

For those reasons, the Court GRANTS Franciscan's motion for summary judgment. [DE 34]. The Clerk is directed to enter judgment accordingly.

SO ORDERED.

ENTERED: April 3, 2018

/s/ JON E. DEGUILIO
Judge
United States District Court